# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

REBECCA JOYCE HARRELL,

    Plaintiff,

    v.

SHERIFF ANDY BATTEN, Bacon
County, Georgia, et al.,

    Defendants.

5:24-CV-74

## ORDER

This action is before the Court on Defendants' motion to dismiss, dkt. no. 24, and Plaintiff's motion to strike, which was embedded in her response to Defendants' motion to dismiss, dkt. no. 28. Both motions have been briefed and are ripe for review. Dkt. Nos. 24, 28, 29, 30. For the reasons set forth below, Plaintiff's motion to strike, dkt. no. 28, is **DENIED**, and Defendants' motion to dismiss, dkt. no. 24, is **GRANTED**.

## BACKGROUND[1]

The facts of this case—as alleged in the second amended

---

[1] In the motion to dismiss analysis, the Court must "accept all factual allegations in a complaint as true[,] and take them in the light most favorable to [the] plaintiff[.]" Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). The Court is also required to liberally construe *pro se* complaints. Lapinski v. St. Croix Condo. Ass'n, Inc., 815 F. App'x 496, 497 (11th Cir. 2020).

complaint, supplemented by materials referenced therein, and depicted in the deputies' bodycam footage—surround the arrest and detention of Plaintiff Rebecca Harrell at the Bacon County, Georgia, jail. See generally Dkt. Nos. 13-1, 13-2, 14, 21. Plaintiff now pursues a myriad of claims against various parties allegedly involved in her arrest and detention: Bacon County Sheriff Andy Batten, Deputies Levin Batten and Hector Espinoza, Detention Officer Kevin Kirkland, Alma-Bacon County Ambulance Service ("ABCAS") official Brent White, ABCAS Paramedic Harvey Cole, ABCAS EMT Amanda Morgan, Bacon County Board of Commissioners Chairman Shane Taylor, and the Bacon County Board of Commissioners itself.[2] Dkt. No. 21. Specifically, Plaintiff alleges Defendants violated various rights under the U.S. Constitution and the Americans with Disabilities Act ("ADA"). Id.

## I.   Evidentiary Materials Extrinsic to the Second Amended Complaint

As a preliminary matter, both parties urge the Court to rely on evidence beyond the factual allegations in the second amended complaint to rule on Defendants' motion to dismiss. Dkt. No. 21

---

[2] Plaintiff also names "John Doe" as a Defendant but does not assert a claim against this party. Dkt. No. 21. That being so, even though the Eleventh Circuit does allow for "fictitious party pleading" under certain circumstances, the Court need not address whether those circumstances are met, and the Court **DISMISSES** John Doe as a defendant in this action. See, e.g., Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (describing the circumstances under which the Eleventh Circuit allows for "fictitious party pleading").

¶¶ 3, 6, 11, 19, 23, 35, 42, 85; Dkt. No. 24 at 2 n.1. Courts analyzing a motion to dismiss use the "incorporation-by-reference" doctrine to allow consideration of evidence extrinsic to the complaint itself. Johnson v. City of Atlanta, 107 F.4th 1292, 1298–99 (11th. Cir. 2024). Under certain circumstances, this doctrine allows the Court to consider evidence either attached to the pleadings or attached to a motion to dismiss. Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Julmist v. Prime Ins. Co., 92 F.4th 1008, 1016 (11th Cir. 2024) (determining the district court appropriately considered an insurance policy attached to the motion to dismiss)). An exhibit attached to the pleadings or a motion to dismiss may be considered without converting a motion to dismiss into a motion for summary judgment "if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." Id. at 1300.

On one hand, Plaintiff includes in the second amended complaint various exhibits to support her claims, including a hyperlink to a publicly available consent decree involving Bacon County, Georgia, and a photo depicting alleged bruising from her arrest and detention. Dkt. No. 21 ¶¶ 35, 85. Plaintiff also attaches to the second amended complaint a summary of Alma-Bacon County Ambulance Service ("ABCAS") vehicles and a map displaying Georgia county membership in an inmate medical savings program.

Dkt. No. 21 at 29-30 (Exhibits F and G); Id. ¶¶ 19, 21. And Plaintiff repeatedly references documents that were attached to previous filings, including Defendant Espinoza's report of the arrest, various medical "problem reports," Plaintiff's ante litem notice, and the bodycam footage filed by Defendants.[3] Dkt. No. 21 ¶¶ 6 (citing "Exhibit B" in Dkt. No. 15), 11 (citing "Exhibits C and D" in Dkt. No. 19), 23 (citing "Exhibit A" in Dkt. Nos. 1 and 12), 42 (citing the bodycam footage in Dkt. No. 14). At the same time, Defendants also rely on extrinsic evidence and assert that the Court should consider bodycam footage from the day of the incident when deciding the present motion to dismiss. Dkt. No. 24 at 2 n.1.

First, the Court may consider the exhibits cited by Plaintiff in the second amended complaint. There is no indication that Defendants challenge the authenticity of these exhibits. See generally Dkt. Nos. 24, 29. While they are not physically attached to the second amended complaint, Plaintiff refers to the exhibits

---

[3] Plaintiff also attempts to reference "Exhibit E," which is a YouTube hyperlink. Dkt. No. 21 ¶ 3 (citing Dkt. No. 19); see also Dkt. No. 19 at 15. The Court has not viewed and does not consider this linked video when deciding the pending motion to dismiss. Under this Court's administrative procedures, when a filing cannot be uploaded to ECF, the filer must submit the information via a CD-ROM or flash drive to the Clerk's Office. See Rule I.A.2, Admin. P. for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means (S.D. Ga. Dec. 1, 2016), available at https://www.gasd.uscourts.gov/sites/gasd/files/RevisedAdminProce duresECF-Dec2-2016.pdf. Plaintiff failed to comply with this rule.

4

within the pleading, and the references or figures themselves are embedded in her claims. See Johnson v. Belcher, 564 F. Supp. 3d 1334, 1341 (N.D. Ga. 2021). These exhibits concern the extent of Plaintiff's physical injuries from the arrest and detention, a report of the arrest, and alleged past constitutional violations by the Bacon County Board of Commissioners ("the Board")—all of which are central to Plaintiff's claims seeking to hold Defendants liable for alleged constitutional and statutory violations stemming from Plaintiff's arrest and detention. Dkt. No. 21.

Second, the Court may consider the bodycam footage relied upon by Defendants. There is no doubt that this footage is central to Plaintiff's claims, as the footage depicts the very arrest she challenges in this action. Dkt. Nos. 13-1, 13-2, 14; Johnson, 107 F.4th at 1301. While Plaintiff takes issue with Defendants' description of the video evidence in the facts section of the present motion to dismiss, dkt. no. 24, Plaintiff does not otherwise challenge the Court's ability to consider the footage itself. See generally Dkt. Nos. 28, 30. Further, while Plaintiff contends that there are alleged disputes between the video evidence and the report filed by Espinoza such that the Court may doubt the *accuracy* of the police report, she does not challenge the authenticity of the bodycam footage. Dkt. No. 28 at 1–2; Dkt. No. 30 at 4-6. In fact, Plaintiff actually relies on the footage in the second amended complaint and explicitly requests that the Court

view the bodycam footage to "match" the incident reports "with the facts of the case." Dkt. No. 21 ¶ 42 (citing Dkt. No. 14); Dkt. No. 30 at 9.

The Court considers the exhibits provided by both Plaintiff and Defendants for the purpose of ruling on the present motion to dismiss. When conducting this analysis, the Court views factual allegations in the second amended complaint as true to the extent they are not contradicted by the video evidence. Belcher, 564 F. Supp. 3d at 1340-41; see also Kass v. New York, 864 F.3d 200, 206 (2d Cir. 2017) ("[W]hen the record includes a video that the parties concede is authentic and accurate, . . . [the court] view[s] the allegations of the complaint as true only 'to the extent that they are not contradicted by video evidence.'" (quoting Garcia v. Does, 779 F.3d 84, 88 (2d Cir. 2015))).

## II. Allegations of the Second Amended Complaint and Incorporated Evidentiary Materials

According to the second amended complaint and incorporated materials, Plaintiff was spending time with family at her home in Alma, Georgia, on September 4, 2023 when Bacon County Sheriff's Office ("BCSO") Deputies, Defendants Levin Batten and Hector Espinoza, arrived. Dkt. No. 21 ¶¶ 1, 3. The Deputies had been dispatched to the residence after a call by Breanna Harrell, Plaintiff's daughter. Dkt. No. 15 at 25. There, according to Deputy Espinoza's report, Breanna Harrell complained that her dog had

been taken by another individual, Melissa Hyers, who was present at Plaintiff's home with the dog. Id. Plaintiff claims that neither Defendant Batten nor Defendant Espinoza revealed his name, job title, or department affiliation at any point during this encounter, but both used profanity and behaved "in an escalated manner." Dkt. No. 21 ¶ 3; see generally Dkt. Nos. 13-1, 13-2.

During this encounter, Deputy Batten began placing Hyers under arrest for taking the dog from Breanna Harrell's residence. Dkt. No. 15 at 25. At that point, Plaintiff allegedly attempted to retrieve a phone that was recording Defendants Batten and Espinoza, and, at the same time, she was "assaulted" by Batten and Espinoza who attempted to "seize" the phone.[4] Dkt. No. 21 ¶ 4; Dkt. No. 13-1 at 00:56-01:02. Defendants Batten and Espinoza subsequently arrested Plaintiff, and, during the arrest, purportedly used a "shocking" amount of physical force. Dkt. No. 21 ¶¶ 7, 34; Dkt. No. 13-1 at 02:12-28, 03:43-04:06, 12:15-23; Dkt. No. 13-2 at 05:00-08, 07:13-58. More specifically, Plaintiff alleges that, Defendant Espinoza launched a "physical assault on her," and she

---

[4] Multiple times within the second amended complaint's "statement of facts," Plaintiff claims that she was "assaulted" by various Defendants, averring that these actions violated her constitutional rights. See, e.g., Dkt. No. 21 ¶¶ 5, 9. While factual allegations are assumed true at this stage, whether an "assault" or "constitutional violation" occurred in the present action is a legal conclusion not entitled to an assumption of truth. Papasan v. Allain, 478 U.S. 265, 286 (1986) ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation.")

denies that she hit or kicked him in any way other than to defend herself from his initial attack.[5] Dkt. No. 21 ¶ 6; see also Dkt. No. 13-1 at 01:31-46, 03:13-40; Dkt. No. 15 at 25. Plaintiff also claims that Defendants Batten and Espinoza used such force in detaining her that one of her shoes came off and her clothing was moved such that her bra and midriff were exposed. Dkt. No. 21 ¶ 34; Dkt. No. 13-2 at 07:05-13, 08:38-55. Further, Plaintiff claims that, at one point during the arrest, while she was seated in her own vehicle, the deputies used "brute physical force" to cause her to fall face-down on the ground before pulling, grabbing, and squeezing her injured shoulder, arms, and hips. Dkt. No. 21 ¶ 35; see also, e.g., Dkt. No. 13-1 at 02:01-12, 04:32-41, 05:15-22; Dkt. No. 13-2 at 07:19-34. Finally, Plaintiff allegedly informed

---

[5] The second amended complaint, the parties' briefing, and the various exhibits tell a variety of stories as to whether Plaintiff truly acted in self-defense rather than initiating her altercation with Defendant Espinoza. Compare Dkt. No. 21 ¶ 6 (claiming self-defense); Dkt. No. 28 at 12-13 (arguing Plaintiff was a compliant and non-resisting person); with Dkt. No. 15 at 25 (Deputy Espinoza's report stating that Plaintiff was interfering with Defendant Batten's attempt to arrest Hyers and that Plaintiff threatened, hit, and kicked Defendant Espinoza after he placed his hand on Plaintiff's arm to stop the alleged interference); id. (claiming that Plaintiff stated to Defendant Espinoza, "If you touch me again, I am going to knock the hell out of you."); Dkt. No. 13-1 at 00:10-49, 01:37-39; Dkt. No. 13-2 at 05:37. While the Court must view the materials before it in the light most favorable to Plaintiff, Dusek, 832 F.3d at 1246, it nonetheless notes that the video evidence showing Plaintiff hitting an officer contradicts the allegation that Plaintiff acted purely in self-defense, Dkt. No. 21 ¶ 6; Dkt. No. 13-1 at 00:05-01:45; Dkt. No. 13-2 at 05:37-50.

the Deputies that, because of various health issues, she did not have the range of motion to be placed in handcuffs behind her back, yet Defendants Batten and Espinoza did so anyway. Dkt. No. 21 ¶ 41; Dkt. No. 13-1 at 02:01-03:10, 04:32-45; Dkt. No. 13-2 at 07:33-09:17.

Plaintiff was then transported to the Bacon County Jail in a patrol vehicle. Dkt. No. 21 ¶¶ 7-10. Plaintiff, who was sixty-six years old at the time of the incident and claims she required a cane to walk due to mobility issues, did not have access to her cane while she exited the patrol car; Plaintiff claims that Defendants Batten and Espinoza "intentionally" left the cane at Plaintiff's home. Id. ¶ 8; Dkt. No. 13-1 at 03:59-04:17; Dkt. No. 13-2 at 09:23-40. Plaintiff also claims Defendant Kevin Kirkland, a detention officer at the Bacon County jail, refused to help her exit the patrol car, even though Plaintiff claims she could see a wheelchair at the top of a nearby ramp. Dkt. No. 21 ¶ 96; see also Dkt. No. 13-1 at 19:18-22 (Plaintiff asking about a wheelchair upon arriving at the Bacon County facility). As a result, Plaintiff, still handcuffed with her hands behind her back, "fell out of the vehicle." Dkt. No. 21 ¶ 96; Dkt. No. 13-1 at 17:48-18:37.

Plaintiff's alleged problems did not cease once she entered the Bacon County Jail. First, Plaintiff claims she was taken to the "farthest room" in the housing unit. Dkt. No. 21 ¶ 97. Once

9

there, Plaintiff allegedly had a seizure in her jail cell. Id. ¶ 8. Defendant Harvey Cole, an ABCAS paramedic, arrived to assess the purported seizure, but Plaintiff complains that Cole was using profanity and acted aggressively during the encounter. Id. ¶¶ 9, 50-51. Further, Plaintiff claims that Defendant Cole "assaulted her" while assessing the seizure by pushing her with both hands toward the wall while she was on the bed, putting his hands forcefully on her chest, and bending her hand at an "unnatural angle." Id. After this alleged assault, Defendant Cole did not transfer Plaintiff to a hospital for medical evaluation despite her having a seizure or displaying seizure-like symptoms. Id. ¶ 59. Plaintiff claims that Detention Officer Kirkland and Advanced EMT Amanda Morgan were also present, but they did not take action to protect Plaintiff or otherwise notify supervisors or appropriate authorities about how Plaintiff had been treated at the jail. Id. ¶ 67.

While Plaintiff was detained in the Bacon County Jail, she claims she experienced a myriad of poor custody conditions, including a lack of lighting, unsanitary drinking water and supplies, faulty doors that would not close or lock, standing water, and exposed cords. Id. ¶¶ 10, 90-91. And she claims she had to take an "inaccessible route" to her bond hearing and was forced to climb up and down a flight of stairs despite various physical injuries. Id. ¶ 10. Finally, Plaintiff claims that she was denied

medical care until the day after her initial detention, and she did not get the same access to "outdoor time" as other individuals in the jail. Id. ¶ 97. In sum, these jail conditions allegedly left Plaintiff with bruises, a rotator cuff injury, and aggravation of previous injuries. Id. ¶ 92.

Plaintiff filed suit in the State Court of Bacon County on August 9, 2024. Dkt. No. 1-1. Defendants removed to this Court, dkt. no. 1, and then filed a motion for a more definite statement, dkt. no. 5. The Court granted that motion, acknowledging Defendants' argument that Plaintiff's complaint was an impermissible "shotgun pleading" and ordering Plaintiff to file an amended complaint. Dkt. No. 11 at 4-6. Plaintiff then filed her first amended complaint, dkt. no. 12, Defendants moved to dismiss all claims, dkt. no. 13, and Plaintiff responded in opposition, dkt. no. 15. The Court denied Defendants' motion to dismiss, reasoning that Plaintiff's amended complaint was still a shotgun pleading but giving Plaintiff leave to amend a second time. Dkt. No. 20 at 6-13. Plaintiff once more amended her complaint. Dkt. No. 21.

The second amended complaint lists nine federal claims against the individual Defendants and the Board—including eight claims focused on alleged constitutional violations and one ADA claim. Id. Plaintiff sues the individual Defendants in both their

11

individual and official capacities.[6] Id. Defendants now renew their motion to dismiss, maintaining that Plaintiff's second amended complaint should be dismissed with prejudice for failure to state a claim upon which relief may be granted, dkt. no. 24, and Plaintiff opposes the motion, dkt. nos. 28, 30.[7] Plaintiff also seeks to strike the statement of facts included in Defendants'

---

[6] While Plaintiff states generally that she pursues this action against Defendants in their individual and official capacities, dkt. no. 21 ¶¶ 15–17, she does not otherwise clarify which counts are official versus individual capacity claims. See generally id. District courts in this circuit have held that the failure to differentiate between individual and official capacity claims "renders [a] complaint a shotgun pleading." See, e.g., Huggins v. Sch. Dist. of Manatee Cnty., No. 8:22-CV-1183-WFJ-TGW, 2022 WL 2343057, at *3 (M.D. Fla. June 29, 2022) (citing Pinkson v. Univ. of S. Fla. Bd. of Trs., No. 8:15-cv-1724-T-33TBM, 2016 WL 3196474, at *6 (M.D. Fla. June 9, 2016)). In the interest of fairness and completeness, the Court presumes that Plaintiff brings all claims against individual Defendants in both their official and individual capacities. See Cherch v. Mock, No. 1:13-CV-586-WHA-WC, 2016 WL 5109187, at *1 (M.D. Ala. Aug. 26, 2016), report and recommendation adopted, 2016 WL 5109149 (Sept. 19, 2016) (reaching a similar conclusion where plaintiff did not clarify capacity in pleadings).

[7] Defendants filed a reply brief in support of their motion, and Plaintiff responded by filing a surreply in opposition. Dkt. No. 30. Local Rule 7.6 governing reply briefs states that "[a] party intending to file a reply brief shall immediately so notify the Clerk." S.D. Ga. L.R. 7.6. While neither Plaintiff nor Defendants notified the clerk prior to filing these briefs, this does not preclude consideration of these filings. See Brown v. Chertoff, No. 406CV002, 2008 WL 5190638, at *1 (S.D. Ga. Dec. 10, 2008) (concluding that the Court should not disregard supplemental briefs filed without satisfying notice and timing provisions of Local Rule 7.6 because that provision is for the Court's benefit rather than a "sword to have a brief stricken"). As such, the Court will consider all briefing filed by the parties in response to the present motion to dismiss. See Dkt. Nos. 24, 28, 29, 30.

motion to dismiss by embedding a "motion to strike" in her brief in response to the motion to dismiss. Dkt. No. 28.

## LEGAL STANDARD

### I.   Motion to Strike

Motions to strike are governed by Federal Rule of Civil Procedure 12(f). Under this rule, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Further, Rule 12(f) authorizes the Court to act either on its own to strike such matters, or "on motion made by a party." Id.

### II.   Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." To determine whether this requirement is satisfied, a court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). But legal conclusions are not entitled to the same presumption of truth, and the Court should not accept allegations as true if they merely recite the elements of a claim and declare that they are met. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Instead, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."

13

Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

The key inquiry at the motion to dismiss stage is whether the complaint contains sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). This means that the complaint must contain sufficient factual information to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Importantly, this does not impose a probability requirement on claimants, but a complaint does need to give rise to "'more than a sheer possibility' that the plaintiff's allegations are true."[8] Gissendaner v. Comm'r, 803 F.3d 565, 568 (11th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

When a litigant is proceeding *pro se,* the Court must liberally construe the complaint, holding the *pro se* party to "a less stringent standard than a pleading drafted by an attorney." Jones

---

[8] In her response brief, Plaintiff contends that her complaint can be dismissed only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Dkt. No. 28 at 5 (citing Lopez v. First Union Nat'l Bank of Fla., 129 F.3d 1186, 1189 (11th Cir. 1997)). This is an outdated pleading standard that is no longer utilized in federal courts. Under the applicable standard, Plaintiff is required to set forth enough factual allegations "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015); see also Lapinski, 815 F. App'x at 497. At the same time, the pleading still must include enough factual allegations to "raise a right to relief above the speculative level." Saunders v. Duke, 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted). "[A] *pro se* pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones, 787 F.3d at 1107.

### DISCUSSION

Before the Court are Plaintiff's motion to strike and Defendants' motion to dismiss. First, the Court **DENIES** Plaintiff's motion to strike because it is both procedurally and substantively improper. Second, the Court **GRANTS** Defendants' motion to dismiss.

### I. Plaintiff's Motion to Strike

In her brief in response to Defendants' motion to dismiss, Plaintiff attempts to "file" a motion to strike, dkt. no. 28 at 1-3, but this motion fails on both procedural and substantive grounds. Regarding procedure, Plaintiff did not properly file her motion to strike. Federal Rule of Civil Procedure 7(b) states that "[a] request for a court order must be made by motion . . . in writing[,] . . . stat[ing] with particularity the grounds for seeking the order; and stat[ing] the relief sought." The Eleventh Circuit frowns upon litigants' attempts to embed a request for

15

relief in a response to another motion, providing, in prior decisions:

> There is ample law in this Circuit interpreting this Rule to justify denying relief where the underlying request is embedded in a brief opposing a motion to dismiss. See, e.g., Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co., 93 F.4th 1315, 1336–37 (11th Cir. 2024) (discussing cases). Though these cases concern motions for leave to amend a complaint, the core procedural tenet is the same: A proper request for a court order may only be made by a formal motion, and a formal motion may not be made in a brief opposing a different motion.

Bolton v. Inland Fresh Seafood Corp. of Am., Inc., 155 F.4th 1272, 1287 (11th Cir. 2025). Here, Plaintiff embedded her motion to strike in her response to Defendants' motion to dismiss rather than following proper procedure, providing the Court with ample reason to deny the motion. Dkt. No. 28 at 1–3; see also Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002)("Despite construction leniency afforded pro se litigants, we nevertheless have required them to conform to procedural rules." (citing Brooks v. Britton, 669 F.2d 665, 666–67 (11th Cir. 1982))).

Even if the Court reaches the merits of Plaintiff's motion, the motion to strike falls short. Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Pursuant to this rule, Plaintiff seeks to strike the "Statement of Facts" section from Defendants' motion to dismiss. Dkt. No. 28 at 1–3. Plaintiff claims that the allegations

16

in that section are prejudicial to Plaintiff and irrelevant to the issues currently before the Court. Id. at 1. And Plaintiff contends that the facts as stated by Defendants are false because the body camera videos submitted by Defendants "do not align with corresponding incident reports," urging the Court to consider these alleged contradictions when evaluating Defendants' "actions and credibility." Dkt. No. 30 at 4–6. On the contrary, Defendants argue that the section should not be stricken because the facts contained therein are both truthful and highly relevant, and "[t]hat a truthful recitation of events may be unflattering to a party is not a basis for striking a pleading under Rule 12(f)." Dkt. No. 29 at 3–4.

Plaintiff's argument conflates a motion to dismiss with later stages in the litigation process. Dkt. No. 28 at 1–3; Dkt. No. 30 at 4–6. Credibility determinations play no part in the motion to dismiss analysis. See, e.g., Warren v. DeSantis, 631 F. Supp. 3d 1188, 1194 (N.D. Fla. 2022) ("Credibility choices play no part in the [motion to dismiss] analysis; a motion to dismiss is not the vehicle by which the truth of a plaintiff's factual allegations can be judged."). This renders inconsequential Plaintiff's concerns about contradictions between the reports and bodycam footage, especially when the key inquiry at the motion to dismiss stage is whether the video evidence contradicts the *allegations in the complaint*—not whether the various forms of extrinsic evidence

17

contradict one another. Kass, 864 F.3d at 206 (viewing allegations in the complaint as true to the extent they were not contradicted by extrinsic evidence also incorporated into the motion to dismiss analysis); see also Sec. & Exch. Comm'n v. Bankatl. Bancorp, Inc., 661 F. App'x 629, 638 (11th Cir. 2016) (highlighting the importance of contradicting evidence at the *summary judgment stage* rather than the motion to dismiss stage).

The Court holds that Plaintiff's motion to strike should be denied and does so without even reaching the reasons cited by Defendants. Federal Rule of Civil Procedure 12(f) authorizes a motion to strike a *pleading.* Defendants' motion to dismiss is not a pleading, nor is the statement of facts within it. See Fed. R. Civ. P. 7(a) (stating that "pleadings" consist of "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."); Blochowicz v. Steinberg, No. CV 125-037, 2025 WL 2201082, at *2 (S.D. Ga. Aug. 1, 2025) (holding that filings such as "motions, briefs or memoranda, objections, or affidavits" do not qualify as pleadings and, as a result, "cannot be the subject of a motion to strike" (citing Eubanks v. Henry Cnty., No. 1:11-CV-3969, 2013 WL 11971258, at *1 (N.D. Ga. June 20, 2013))); see also Silva v. Swift, 333 F.R.D. 245, 248 (N.D. Fla. 2019) ("Rule 12(f) does not

authorize courts to strike motions, affidavits, or memoranda in support of motions."). In short, Plaintiff asks the Court to strike a portion of a motion, not a pleading, and Rule 12(f) does not authorize such relief. Blochowicz, 2025 WL 2201082, at *2; Silva, 333 F.R.D. at 248. Based on these procedural and substantive deficiencies, Plaintiff's motion to strike is **DENIED**.

## II.  Defendants' Motion to Dismiss

Defendants argue that all of Plaintiff's claims should be dismissed due to a combination of Eleventh Amendment immunity, qualified immunity, and Plaintiff's purported failure to plausibly allege each count. Dkt. Nos. 24, 29. In response, Plaintiff argues that immunity does not warrant dismissal of her claims, which, in her opinion, are *all* sufficiently alleged. Dkt. Nos. 28, 30. The Court holds that some of Plaintiff's claims should be dismissed as impermissible shotgun claims.[9] Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321–23 (11th Cir. 2015). Others

---

[9] The existence of some shotgun claims does not mandate dismissal of the entire complaint. See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n, 942 F.3d 1200, 1207–08 (11th Cir. 2019) (considering plaintiff's *pro se* complaint for viable claims despite it displaying some characteristics of a shotgun pleading); Albert v. Lincoln Bancorp, No. 1:23-CV-04409-SCJ, 2024 WL 6861939, at *1 (N.D. Ga. Apr. 9, 2024) (dismissing some claims as shotgun claims, rather than the complaint in its entirety, and allowing the remaining claims to proceed past the motion to dismiss stage), appeal dismissed, No. 24-13039, 2024 WL 4541390 (11th Cir. Oct. 22, 2024). As a result, though the Court finds that some claims fail on shotgun pleading grounds, the remaining claims fail for separate, independent reasons.

19

must be dismissed because they do not rest on a viable legal theory. Fin. Sec. Assurance, 500 F.3d at 1282–83. Defendants are immune from some claims under the Eleventh Amendment. See, e.g., Hardy v. Ga. Dep't of Corr., No. CV 117-172, 2019 WL 4670758, at *4 (S.D. Ga. Sept. 24, 2019) (summarizing Eleventh Amendment immunity). A handful of claims should be dismissed for failure to plausibly allege a constitutional violation. St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002) (holding that, where qualified immunity is raised at the motion to dismiss stage, "[t]he motion to dismiss will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" (citations omitted)). The remaining claims fall short of federal courts' "plausibility requirement." Iqbal, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss is **GRANTED.**

### A.   Plaintiff's Shotgun Claims[10]

The Court, on two prior occasions, has noted Plaintiff's failure to comply with Federal Rules of Civil Procedure 8 and 10. See Dkt. Nos. 11, 20. Plaintiff has already been afforded two

---

[10] While Defendants state that Plaintiff's second amended complaint "likely suffices as a 'short and plain statement' of her claims under the relaxed pleading standard applicable to pro se litigants," dkt. no. 24 at 1, this does not foreclose the Court's ability to analyze whether the second amended complaint remains a shotgun pleading. See Johnson Enters. of Jack., Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1333 (11th Cir. 1998) (recognizing the responsibility of district courts to intervene *sua sponte* to define issues early in litigation rather than allowing shotgun pleadings to proceed).

opportunities to amend her complaint to comply with the rules. Dkt. Nos. 11, 20 (the Court's two prior Orders labeling Plaintiff's complaint and first amended complaint a shotgun pleading but giving her an opportunity to replead). However, even after *three* bites at the apple, Count Six is still a shotgun claim, and, as a result, should be dismissed. Count Seven, too, remains deficient.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." At the same time, Rule 10(b) outlines the mechanics of such a pleading, providing as follows:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Under Rules 8 and 10, a court is not required to rifle through a complaint's various factual allegations to discern which facts, if any, are materially related to a plaintiff's claims. Beckwith v. BellSouth Telecommc'ns Inc., 146 F. App'x 368, 372 (11th Cir. 2005). Rather, it is the duty of the party pursing a claim to frame its pleading in a manner that gives defendants proper notice of the claims asserted and allows defendants to formulate a responsive pleading. Weiland, 792 F.3d at 1320. These procedural requirements

also enable the Court to discern whether the claims can surpass a motion to dismiss for failure to state a claim. Id. If a complaint fails to serve this purpose, it is deemed an impermissible "shotgun pleading." Id.

There are four primary types of shotgun pleadings under Eleventh Circuit caselaw:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire. The next most common type, at least as far as [Eleventh Circuit] published opinions on the subject reflect, is a complaint that does not commit the mortal sin of realleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

Id. at 1321–23 (footnotes omitted).

While filings by pro se litigants are to be liberally construed, these parties are still required to abide by procedural rules governing access to the federal court system. Tucker v. United States, 724 F. App'x 754, 756–57 (11th Cir. 2018) (citing

Campbell v. Air Jam. Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014); Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007)); see also Jarrett v. US Sprint Comm'ns Co., 22 F.3d 256, 260 (10th Cir. 1994) (recognizing that federal procedural rules may not be "disregarded by courts out of a vague sympathy for particular litigants"). "[I]n the long run," strict adherence to such procedural requirements—even in cases involving *pro se* litigants— "is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980). Beyond the benefits of upholding procedural rules generally, the Eleventh Circuit places special emphasis on enforcing the requirements of Rules 8 and 10. See Philippeaux v. Mia. Apartments Inv'rs, LLC, No. 22-11692, 2023 WL 2989831, at *1 (11th Cir. Apr. 18, 2023). More specifically, this circuit has "little tolerance for shotgun pleadings," given that "[t]hey waste scarce judicial resources, inexorably broaden[ ] the scope of discovery, wreak havoc on appellate court dockets, and undermine[ ] the public's respect for the courts." Id. (quoting Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018)).

Turning to the second amended complaint, Count Six should be dismissed on shotgun pleading grounds because Plaintiff fails to separate all her causes of action into separate counts. Weiland, 792 F.3d at 1322. In its May 28, 2025 Order, the Court took issue with Plaintiff's first amended complaint for seeking to jumble

multiple distinct causes of action into a single count. Dkt. No. 20 at 10-11. One such count ran afoul of Rules 8 and 10 because Plaintiff "trie[d] to assert a claim for excessive force and unreasonable search and seizure under the Fourth Amendment, as well as a violation of her First Amendment rights, all under Count Three." Id. at 11. The same issue is present in the second amended complaint, wherein Plaintiff tries to assert a claim for "retaliatory actions" and "unreasonable search and seizure" under the Fourth Amendment, as well as a violation of her First Amendment rights, all under Count Six. Dkt. No. 21 ¶¶ 70-82. This fails to satisfy federal pleading requirements and warrants dismissal of Count Six, especially in light of the distinct requirements to plead a First Amendment claim versus a Fourth Amendment claim under 42 U.S.C. § 1983. Compare Corbitt v. Vickers, 929 F.3d 1304, 1315 (11th Cir. 2019) (describing the requirements to state a Fourth Amendment claim (quoting Troupe v. Sarasota Cnty., 419 F.3d 1160, 1166 (11th Cir. 2005))), with Gibbons v. McBride, 124 F. Supp. 3d 1342, 1373 (S.D. Ga. 2015) (outlining the requirements to state a First Amendment claim (citing Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1197 (11th Cir. 2011); Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005), abrogated in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009))). As such, Count Six fails to comply with Rules 8 and 10.

24

Count Seven similarly falls short.[11] In this count, Plaintiff brings a general "Fourth Amendment violation" claim against Sheriff Batten, Defendants White and Taylor, and the Board. Dkt. No. 21 ¶ 83–87. Not only does this claim fail to include sufficient factual support for its assertions, but Plaintiff improperly attempts to assert new facts and legal theories pertinent to this claim for the first time in response to Defendants' motion to

---

[11] The basis for Plaintiff's claim in Count Seven is unclear. While Plaintiff lists 42 U.S.C. § 1983 as the relevant statutory cause of action in either the caption or body of surrounding claims, Plaintiff does not refer to Section 1983 anywhere in Count Seven. Dkt. No. 21 ¶¶ 83–87. Instead, Plaintiff claims general "Fourth Amendment violations." Id. ¶ 83. The Supreme Court has yet to opine conclusively on whether Section 1983 is the exclusive vehicle to challenge an alleged Fourth Amendment violation by a state official. See, e.g., Thomas v. Shipka, 818 F.2d 496, 500 (6th Cir. 1987) ("The Supreme Court has never recognized a cause of action arising directly under the Constitution in a case where § 1983 was available as a remedy."), on reh'g in part on other grounds, 829 F.2d 570 (6th Cir. 1987), cert. granted, judgment vacated, 488 U.S. 1036 (1989), and vacated, 872 F.2d 772 (6th Cir. 1989); Carlson v. Green, 446 U.S. 14, 52 n.18 (1980) (Rehnquist, J., dissenting) ("[I]t would clearly be invasion of the legislative province for this Court to fashion a constitutional damages remedy against state officials that would exist concurrently with § 1983."). But see Fulton v. Fulton Cnty. Bd. of Comm'rs, 148 F.4th 1224, 1258 (11th Cir. 2025) (concluding that Section 1983 was not an exclusive remedy with respect to the Takings Clause of the Fourteenth Amendment and recognizing a direct cause of action). However, because Count Seven nonetheless fails to provide sufficient factual support and relies on conclusory allegations, the Court need not decide whether Plaintiff can maintain a Fourth Amendment cause of action independent of the statutory cause of action in Section 1983.

dismiss—allegations which, if considered, warrant dismissal on shotgun pleading grounds for failure to separate all causes of action into different claims. Dkt. No. 28 at 18–25. Put differently, Plaintiff fails to state a claim in Count Seven under Rule 12(b)(6), then tries to rely on pages of factual allegations that (a) have not been properly pled despite this being the third rendition of the complaint, and (b) lead to even more confusion and violations of Rule 8 and 10 if they are considered. This is not the proper course of action to survive a motion to dismiss in federal court.

Turning first to the allegations that actually appear in the second amended complaint and incorporated exhibits, Plaintiff seems to be asserting a supervisory liability claim in Count Seven. Dkt. No. 21 ¶¶ 83–87. To surpass a motion to dismiss on supervisory liability claims like this, a plaintiff must plausibly allege that the supervisor either personally participated in the alleged constitutional violation or that "there is a causal connection between actions of the supervising official and the alleged constitutional violation." Keating v. City of Mia., 598 F.3d 753, 762 (11th Cir. 2010) (citations omitted). "A causal connection can be established by, *inter alia*, facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id.

26

Plaintiff does not claim that Sheriff Batten, Defendants Taylor and White, or the Board personally participated in the alleged constitutional violation, nor does she claim that these Defendants directed any individual to act unlawfully. Dkt. No. 21 ¶¶ 83–87. Rather, she claims that "Defendant Sheriff Batten, White, Taylor and [the] Bacon County Board of Commissioners know that the use of unreasonable or excessive force violates . . . the Fourth Amendment." Id. ¶ 85. As a result, Plaintiff seeks to hold Sheriff Batten, Defendants Taylor and White, and the Board liable for alleged failures to "supervise and provide corrective action and discipline as necessary to deputies, jail staff, EMS personnel, and other employees to ensure they do not engage in a pattern, practice, or custom" of constitutional violations. Id. ¶ 86.

Plaintiff's allegations in Count Seven are insufficient because they are conclusory, as Plaintiff does not provide in the second amended complaint factual background on the knowledge of these Defendants or how they failed to stop alleged constitutional violations. Id. ¶¶ 1–11, 83–87; see also Iqbal, 556 U.S. at 678. Even further, while Plaintiff states that these Defendants knew that unreasonable force could amount to a constitutional violation in a general sense, she does not provide any factual support to suggest that these Defendants knew *their subordinates* would use

27

unreasonable force and failed to stop it.[12] Id. ¶¶ 1-11, 83-87.

Accordingly, based on the information properly before the Court,

Count Seven is not plausibly alleged.

Rather than focusing on the facts as pled, Plaintiff includes

in her brief in response to Defendants' motion to dismiss an

abundance of new facts that do not appear in the second amended

complaint or the attached exhibits. Dkt. No. 28 at 18-25. There,

Plaintiff focuses on three different methods for establishing

supervisory liability: (1) official policy, (2) custom or

practice, and (3) failure to train or supervise. Id. Defendants

are correct that the additional factual allegations in Plaintiff's

response are not properly before the Court, dkt. no. 29 at 14, as

"plaintiffs cannot amend their complaint through a response to a

motion to dismiss." Burgess v. Religious Tech. Ctr., Inc., 600 F.

App'x 657, 665 (11th Cir. 2015) (citing Rosenberg v. Gould, 554

F.3d 962, 967 (11th Cir. 2009)). However, had Plaintiff

incorporated the legal and factual allegations from her response

_____

[12] The only potential factual support contained in the second
amended complaint is Plaintiff's inclusion of a link to a consent
decree allegedly involving the Board, where she argues that the
consent decree shows the Board's "history of violating
constitutional rights." Dkt. No. 21 ¶ 85. However, the cited
consent decree involved alleged sex discrimination analyzed over
two decades ago, in which the United State sought to stop purported
violations of Title VII of the Civil Rights Act of 1964—not
violations of the Fourth Amendment or any other constitutional
provision. See United States v. City of Alma-Bacon Cnty., Ga.,
Consent Decree (S.D. Ga. 1999).

28

brief into the second amended complaint, Count Seven would be properly dismissed on shotgun pleading grounds for failure to separate all causes of action into separate counts. Weiland, 792 F.3d at 1322.

In her response brief, Plaintiff cites a constellation of distinct legal theories as the basis for Count Seven, including negligent supervision, vicarious liability, and deliberate indifference.[13] Dkt. No. 28 at 18–25. While Count Seven purports to be a general "Fourth Amendment" claim, courts in this circuit have held that the situations underlying deliberate indifference claims are governed by the Fourteenth Amendment—a separate cause of action. Waters v. City of Sunrise, No. 21-CV-62542, 2022 WL 1001488, at *5 (S.D. Fla. Apr. 3, 2022) ("Because a deliberate indifference claim must arise from a custodial context and claims involving the mistreatment of arrestees and pretrial detainees are governed by the Fourteenth Amendment, Plaintiff's deliberate indifference claim premised on the Fourth Amendment fails."); see also Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996)

---

[13] In the section of her surreply addressing "official policies" that could allegedly support supervisory liability, Plaintiff primarily focuses on the behaviors of Defendants Batten and Espinoza rather than the Defendants against whom the supervisory liability claim is asserted. Dkt. No. 30 at 9–14. She claims in that section that Defendants Batten and Espinoza violated their "sworn Oath of Office under O.C.G.A. § 16-10-1." Id. at 11. This does not remedy the deficiencies in Count Seven, but it does further obfuscate the underlying basis for Plaintiff's supervisory liability claim.

("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause[.]").

Similarly, Plaintiff attempts to rely on both negligent supervision and vicarious liability, causes of action which each, again, carry their own independent requirements.[14] Compare Collins v. GKD Mgmt., LP, 697 F. Supp. 3d 1308, 1324 (N.D. Ga. 2023) (applying Georgia tort law to analyze a negligent supervision claim and stating that there must be "sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff" (quoting Novare Grp., Inc. v. Sarif, 718 S.E.2d 304, 309 (Ga. 2011))), opinion clarified, No. 3:19-CV-121-TCB, 2024 WL 3551145 (N.D. Ga. June 24,

---

[14] Beyond the shotgun pleading issue, a negligent supervision and vicarious liability claim would also fail on the merits. To the extent Count Seven is a "negligent supervision" claim, it also fails for want of an underlying claim. "Under Georgia law, claims for negligent supervision and retention 'are derivative and cannot survive without the underlying substantive claim.'" Hesed-El v. McCord, No. CV 117-146, 2019 WL 1441624, at *5 (S.D. Ga. Mar. 29, 2019), aff'd, 829 F. App'x 469 (11th Cir. 2020)(quoting Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1329 (N.D. Ga. 2009)). Following the Court's conclusion on Counts One and Three, discussed infra, there is no underlying Fourth Amendment claim to support a negligent supervision cause of action. To the extent Plaintiff relies on vicarious liability, she lacks a legal basis to do so. Iqbal, 556 U.S. 662, 676 ("Based on the rules our precedents establish, respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

30

2024), with Cotton States Mut. Ins. Co. v. Kinzalow, 634 S.E.2d 172, 174 n.3 (Ga. Ct. App. 2006) ("In order to succeed in a claim of respondeat superior against an employer, one must first prove the existence of an underlying tort, and then establish that the employee was acting in furtherance of the employer's business and that he was acting within the scope of the employer's business when the tort was committed.").

When the allegations in the second amended complaint are read alongside the additional allegations in Plaintiff's response brief, Count Seven may be an attempt to assert a number of causes of action—from federal constitutional claims to state-law tort claims or another cause of action—all in a single count. See generally Dkt. Nos. 21, 28, 30; see also Weiland, 792 F.3d at 1322. This is, in a word, confusing. Like the issues plaguing Count Six, Plaintiff's attempt to combine multiple distinct causes of action in a single general "Fourth Amendment" count leaves Defendants and the Court without a clear answer on which of the many possible tests apply to this claim.[15] Weiland, 792 F.3d at 1323 ("The

---

[15] Plaintiff argues that Defendants have proper notice of the claims against them because she sent them an *ante litem* notice. However, a party does not automatically state a claim in federal court by sending an *ante litem* notice—plaintiffs must still comply with federal pleading requirements. Hajhossein v. City of Statesboro, No. 609CV048, 2010 WL 538209, at *2-4 (S.D. Ga. Feb. 12, 2010) (concluding that plaintiff would fail to state plausible claim even if plaintiff amended the complaint to allege they sent a proper *ante litem* notice).

unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). As a result, not only is Count Seven improperly pled, but Plaintiff's additional allegations are not properly before the Court, and, even if they were incorporated into the second amended complaint, Count Seven would fail on shotgun pleading grounds. In short, Counts Six and Seven are **DISMISSED.**

### B.    Plaintiff's Claims Lacking Any Legal Basis

To survive a motion to dismiss, a claim must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some viable legal theory*." Fin. Sec. Assurance, Inc., 500 F.3d at 1282-83 (emphasis added). Three of Plaintiff's claims do not have such a basis. Specifically, in Counts Two, Four, and Eight, Plaintiff brings claims for "elder abuse" and "failure to maintain jail conditions," which Plaintiff claims violated her rights under the Eighth Amendment. Dkt. No. 21 ¶¶ 37-45, 55-62, 88-94. Defendants argue that Plaintiff lacks a legal basis to challenge her arrest and treatment at the Bacon County Jail under the Eighth Amendment because "the Eighth Amendment only applies to convicted criminals." Dkt. No. 24 at 11. In response, Plaintiff does not specifically address whether she was covered by the Eighth

32

Amendment's protections during her arrest and detention but rather cites a handful of cases analyzing "unnecessary and wanton infliction of pain." Dkt. No. 28 at 11–12 (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981); Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999)).

The Court holds that Plaintiff lacks a legal basis to pursue her Eighth Amendment claims. Both the history of the Eighth Amendment and Supreme Court caselaw interpreting it establish that the amendment "was designed to protect those convicted of crimes." Ingraham v. Wright, 430 U.S. 651, 664 (1977). As such, scrutiny of a State's compliance with the Eighth Amendment's guarantees is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecution, as "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." Id. at 671 n.40. "Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Id.

According to the second amended complaint and referenced exhibits, all events precipitating Plaintiff's alleged loss, including her arrest and detention, occurred between September 4, 2023, and September 5, 2023. Dkt. No. 12 at 29; Dkt. No. 21 ¶ 1.

33

Defendant Espinoza indicates in his report that he applied for warrants on Plaintiff for "terroristic threats and acts" and "obstruction of law enforcement officers" as a result of this incident. Dkt. No. 15 at 25. However, neither the second amended complaint nor the exhibits indicate that Plaintiff was ultimately convicted on either charge. Dkt. No. 21; Dkt. No. 12 at 27-30; Dkt. No. 15 at 25; Dkt. No. 19 at 13-15. Because Plaintiff is challenging her arrest and treatment during her brief detention, but the State never obtained a formal adjudication of guilt, Plaintiff does not have a legal basis for her Eighth Amendment claims. Ingraham, 430 U.S. at 671 n.40; see also Weiland, 792 F.3d at 1325 ("The fact that it includes constitutional amendments under which he is not entitled to relief would be dispositive in a Rule 12(b)(6) analysis[.]").

Finally, the caselaw cited by Plaintiff in support of her Eighth Amendment claims does not help these counts escape dismissal. Plaintiff argues that her Eighth Amendment claims should survive in light of the U.S. Supreme Court's decision in Rhodes v. Chapman, 452 U.S. 337, 346 (1981), and the Eleventh Circuit's decision in Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). However, Rhodes specifically addressed the limitation that the Eighth Amendment "imposes upon the conditions in which a State may confine those *convicted of crimes*." 452 U.S. at 345 (emphasis added). Sikes analyzed the conditions under which

34

"convicted inmates" could maintain an Eighth Amendment claim against prison officials. 169 F.3d at 1374. At bottom, because binding caselaw, including the cases cited by Plaintiff herself, confirms that Plaintiff does not have a legal basis for her Eighth Amendment claims, Counts Two, Four, and Eight are **DISMISSED.**

### C.   Eleventh Amendment Immunity

The Eleventh Amendment "bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued," and the State has not otherwise waived immunity.[16] Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)). Defendants raise Eleventh Amendment immunity as a defense to Plaintiff's official capacity claims brought under Section 1983,[17]

---

[16] In the second amended complaint, Plaintiff contends that all Defendants have waived sovereign immunity pursuant to O.C.G.A. § 33-24-51. Dkt. No. 21 ¶ 22. This statute only waives sovereign immunity of local governmental entities for losses "arising out of claims for the negligent use of a covered motor vehicle." O.C.G.A. 33-24-51(b). Plaintiff asserts no such claim.

[17] The Court's analysis of Eleventh Amendment immunity is limited to Plaintiff's Section 1983 claims because it is being raised by Defendants as a defense to specific counts rather than an outright jurisdictional bar. See generally Dkt. No. 24. Defendants raise Eleventh Amendment immunity only with respect to Plaintiff's claims under 42 U.S.C. § 1983, and they contend that this immunity bars claims against only Sheriff Batten and his employees. Id. at 7. While Eleventh Amendment immunity, in other cases, may function as a "jurisdictional" bar that may be raised by the Court *sua sponte*, Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 227 (4th Cir. 1997), this jurisdictional immunity from suit in the federal forum is waived when Defendants remove a case to federal court—but parties retain the right to raise state sovereign immunity as a *defense*. Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*,* 535

claiming that Plaintiff may not maintain these claims against Sheriff Batten or his employees because they were acting as an arm of the state.[18] Dkt. No. 24 at 6.

To be entitled to Eleventh Amendment immunity, a defendant need not be a "state officer" or "state official." Manders, 338 F.3d at 1308. Rather, defendants are entitled to Eleventh Amendment immunity when they are "acting as an 'arm of the State,' which

---

U.S. 613, 619–21 (2002); Meyers ex rel. Benzing v. Texas, 454 F.3d 503, 504 (5th Cir. 2006). As such, this Order's Eleventh Amendment immunity analysis is limited to Plaintiff's Section 1983 claims targeted by Defendants' motion. Dkt. No. 24 at 7. Finally, in Counts Seven and Eight, Plaintiff claims she experienced "constitutional violations," but, unlike the other six counts challenging alleged constitutional violations, dkt. no. 21 ¶¶ 26–82, she does not list Section 1983 in the counts' caption or substantive allegations. Dkt. No. 21 ¶¶ 83–94; see also Torres v. Mia.-Dade Cnty., Fla., 734 F. App'x 688 691 (11th Cir. 2018) ("Liberal construction, in more concrete terms, means that federal courts must sometimes look beyond the labels used in a pro se party's complaint and focus on the content and substance of the allegations." (citing Means v. Alabama, 209 F.3d 1241, 1242 (11th Cir. 2000))). As a result, while Counts Seven and Eight fail on independent grounds, this Order should not be construed to opine on whether Eleventh Amendment immunity warrants dismissal of Counts Seven or Eight. Nor does this Order rule on whether Eleventh Amendment immunity is a valid defense to Plaintiff's ADA claim or her claims against those Defendants who do not work for Sheriff Batten. Dkt. No. 21 ¶¶ 95–100.

[18] Because Defendants raise Eleventh Amendment immunity as a defense to claims against only Sheriff Batten and his employees, this Order does not rule on whether Eleventh Amendment immunity warrants dismissal of claims against ABCAS employees Cole and Morgan. Dkt. No. 24 at 6. Plaintiff contends that ABCAS is an entity under control of the Bacon County Board of Commissioners— rather than the sheriff. Dkt. No. 21 ¶ 19; see also Manders, 338 F.3d at 1309-12 (analyzing in great detail the relationship between sheriffs and Georgia counties and drawing a distinction between county-governed and sheriff-governed entities).

includes agents and instrumentalities of the State." Id. (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429–30 (1997)). Whether this condition is satisfied depends on the specific function in which a defendant was engaged when the challenged actions occurred. Id. (citations omitted).

This circuit considers four factors to determine whether an entity acts as an "arm of the state" when carrying out a particular function. Id. These factors include: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. Id. (citations omitted). While the issue of whether a claim against a particular entity should be dismissed due to Eleventh Amendment immunity is ultimately a question of federal law, this does, at least in part, depend on Georgia's legal terrain. Id. Accordingly, based on Plaintiff's Section 1983 official capacity claims to which Defendants raise Eleventh Amendment immunity as a defense, the Court holds that Count One against Defendants Batten and Espinoza and Count Five against Defendant Kirkland should be dismissed on Eleventh Amendment immunity grounds.[19]

---

[19] This Court's conclusions on "state actor" status in the Eleventh Amendment analysis provide yet another reason to dismiss these official capacity claims: that Defendants Batten, Espinoza, and Kirkland are not "persons" subject to liability under 42 U.S.C. § 1983. Section 1983 provides a right of action against "'persons' who deprive someone of their rights, privileges, or immunities

### i.    Immunity of Bacon County Deputies

In Count One, Plaintiff brings a claim under 42 U.S.C. § 1983 against Defendants Batten and Espinoza for alleged Fourth Amendment violations. Dkt. No. 21 ¶¶ 26-36. This Court has previously held that sheriffs and deputy sheriffs in Georgia may, under certain circumstances, act as an "arm of the state" for Eleventh Amendment purposes. See, e.g., Turner v. Martin, 521 F. Supp. 3d 1310, 1319 (S.D. Ga. 2021) (citing Temple v. McIntosh Cnty., No. 2:18-cv-91, 2019 WL 287482, at *4 (S.D. Ga. Jan. 22, 2019); Grech v. Clayton Cnty., 335 F.3d 1326, 1336 (11th Cir. 2003)). These circumstances include arrest procedures, as the "Eleventh Amendment protections for sheriffs and deputies reach beyond the jailhouse to other traditional law enforcement functions, including arrests." Id. (citing Temple, 2019 WL 287482, at *4); see also Townsend v. Coffee Cnty., Ga., 854 F. Supp. 2d 1345, 1352 (S.D. Ga. 2011) (citing the Eleventh Circuit's decision

---

secured by the Constitution." Iraheta v. Houston Cnty., No. 5:21-CV-00104-TES, 2022 WL 209273, at *5 (M.D. Ga. Jan. 24, 2022). But, even if a defendant is a human being rather than a non-human entity, the U.S. Supreme Court has concluded that "a suit against a state official in [his] official capacity is not a suit against the official but rather is a suit against the official's office." Id. (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). As a result, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will, 491 U.S. at 71. In sum, Defendants Batten, Espinoza, and Kirkland cannot be liable under Section 1983 in their official capacities pursuant to Counts One and Five. See Iraheta, 2022 WL 209273, at *5 (same).

in Manders to conclude that deputy was entitled to Eleventh Amendment immunity to official capacity claim involving investigatory stop and arrest).

In the events challenged in Count One's excessive force claim, Defendants Batten and Espinoza were executing an arrest in their capacities as Bacon County Deputies. Dkt. No. 21 ¶¶ 1-8, 11, 26-36. Based on this, Defendants Batten and Espinoza are entitled to the protections of the Eleventh Amendment "because any recovery against [them] would operate against the State of Georgia, and the State of Georgia has not waived its immunity or consented to be sued." Martin, 521 F. Supp. 3d at 1320 (dismissing official capacity claim against sheriff's deputy executing arrest). Thus, to the extent Plaintiff asserts Count One against Defendants Batten and Espinoza in their official capacities, Count One is **DISMISSED.**

### ii.  Immunity of Bacon County Detention Officer

In Count Five, Plaintiff pursues a failure to intervene claim against Defendant Kirkland, a detention officer at the Bacon County Jail. Dkt. No. 21 ¶¶ 63-69. Defendant Kirkland, when acting in his capacity as a Bacon County Detention Officer, qualifies as a "state actor" for the purpose of Eleventh Amendment immunity. Iraheta, 2022 WL 209273, at *5. While a county sheriff itself "is a state actor for purposes of providing medical care to inmates and detainees," "so are sheriff's detention officers." See id. (citing Pelliterri v. Prine, 776 F.3d 777, 780 (11th Cir. 2015)); see also

39

Warren v. Walton, 203 S.E.2d 405, 409 (Ga. 1973) ("recogniz[ing] that 'deputy sheriffs and deputy jailors are employees of the sheriff, whom the sheriffs alone are entitled to appoint or discharge'"); Odom v. Jasper Cnty., No. 5:14-cv-22, 2016 WL 1254358, at *5 n.46 (M.D. Ga. Mar. 29, 2016) ("To the extent Plaintiffs bring claims against [defendant] in his official capacity as a detention officer he is also entitled to Eleventh Amendment immunity because he is an employee of the Sheriff.")).

Caselaw from the Eleventh Circuit and district courts within it indicates that a sheriff and his employees act as an arm of the state when governing conditions of confinement and providing medical services to inmates.[20] Hood v. Lawrence, No. 5:21-CV-64, 2022 WL 889964, at *5 (S.D. Ga. Mar. 25, 2022) (citing Purcell ex rel. Estate of Morgan v. Toombs Cnty., 400 F.3d 1313, 1325 (11th Cir. 2005)). More specifically, as has been noted by this Court, there was a time when the Eleventh Circuit "agreed that a sheriff does not act as an arm of the state when providing medical care for inmates in the county jail." Id. (citing Lewis v. Whisenant, No. 5:15-CV-77, 2016 WL 4223721, at *5 (S.D. Ga. Aug. 9, 2016)

---

[20] Plaintiff, allegedly quoting Manders, 338 F.3d 1304, argues that "[a] Georgia sheriff acts as an arm of the county, not the state, when establishing policies and procedures for the daily management of inmates in the county jail." Dkt. No. 28 at 7. The Court notes that this cited quotation does not appear in the Manders opinion, and, as a result, Plaintiff's cited authority does not suffice to preclude application of Eleventh Amendment immunity.

40

(collecting cases)). Yet, "in late 2016, the Eleventh Circuit held that sheriffs *are* 'arms of the state' in providing food to inmates, analogizing that function to the provision of medical services—which, the court suggested, was also a state function." Id. (citing Lake v. Skelton, 840 F.3d 1334, 1340-41 (11th Cir. 2016)). Along these lines, district courts since then have "apparently unanimously" followed the Eleventh Circuit's reasoning in Lake to conclude that a sheriff and his deputies act as "arms of the state" when providing medical services to inmates. Id.

In the second amended complaint, Plaintiff alleges that Defendant Kirkland "looked on" as Defendant Cole was providing medical assessment after Plaintiff's seizure.[21] Dkt. No. 21 ¶ 9. That being so, based on courts in this circuit's analyses of detention officers, alongside Eleventh Circuit caselaw surrounding provision of medical services to detainees, this Court holds that Defendant Kirkland is entitled to Eleventh Amendment immunity from claims surrounding Plaintiff's medical care and Defendant Kirkland's alleged failure to intervene. Dkt. No. 21 ¶¶ 9, 63-69. Accordingly, to the extent Plaintiff intends Count Five to be

---

[21] Plaintiff also complains that Defendant Kirkland did not assist her in exiting the patrol vehicle or provide a wheelchair for her upon her arrival at the jail. Dkt. No. 21 ¶ 8. However, these actions need not be analyzed to discern whether Defendant Kirkland is entitled to Eleventh Amendment immunity as to Count Five. This is because Count Five is focused specifically on Plaintiff's alleged medical emergency and her interactions with Defendant Cole, not her initial arrival at the jail. Id. ¶¶ 63-69.

against Defendant Kirkland in his official capacity, that claim is **DISMISSED.**

### D.   Qualified  Immunity  and  Failure  to  Allege  a Constitutional Violation

Alongside  Eleventh  Amendment  immunity,  Defendants  also contend that various claims against them should be dismissed on qualified immunity grounds. Qualified immunity "offers complete protection  for  government  officials  sued  in  their  individual capacities if their conduct 'does not violate clearly established statutory  or  constitutional  rights  of  which  a  reasonable  person would have known.'" Grider v. City of Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir. 2010) (citations omitted). The purpose of the qualified immunity defense is to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)) (internal quotation marks omitted). In other words,  the  qualified  immunity  defense  seeks  to  balance  two important interests: accountability of public officials and "the need  to  shield  officials  from  harassment,  distraction,  and liability when they perform their duties reasonably." Miller v. Palm Beach Cnty. Sheriff's Off., 129 F.4th 1329, 1333 (11th Cir. 2025) (citations omitted). Importantly, qualified immunity "grants

officials 'a right not to be subjected to litigation beyond the point at which immunity is asserted.'" Id. (citing Howe v. City of Enter., 861 F.3d 1300, 1302 (11th Cir. 2017)).

When a defendant asserts qualified immunity, district courts must first discern whether "the defendant was engaged in a discretionary function." Id. (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). If that is the case, the burden then "shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." Id. (quoting Holloman, 370 F.3d at 1264). At that point, Plaintiff must satisfy a two-part inquiry, establishing that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Id. (quoting Holloman, 370 F.3d at 1264). This two-step inquiry may be conducted in whatever order the district court deems most appropriate for the case. Id. (quoting Townsend, 601 F.3d at 1158).

The Court will address the qualified immunity defense only in the context of two Fourth Amendment claims: Count One against Defendants Batten and Espinoza in their individual capacities, and Count Three against Defendant Cole in his individual capacity. Dkt. No. 21 ¶¶ 26–36, 46–54. The remaining claims to which Defendants assert qualified immunity as a defense can be properly dismissed on other grounds. See Townsend, 854 F. Supp. 2d at 1352 (limiting qualified immunity analysis to a subset of claims because

43

the remaining constitutional claims were dismissed on other grounds). The qualified immunity analysis leads the Court to two conclusions: (1) Counts One and Three should be dismissed in their entirety on 12(b)(6) grounds for failure to allege a constitutional violation; and, in the alternative, (2) Counts One and Three against Defendants in their individual capacities should be dismissed on qualified immunity grounds.

### i.    Discretionary Functions

First, the Court holds that Defendants Batten, Espinoza, and Cole acted within their discretionary authority when carrying out the actions challenged in Counts One and Three. On this point, courts look to whether there exist "objective circumstances which would compel the conclusion that [defendants'] actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." Gibbons, 124 F. Supp. 3d at 1368–69 (quoting Hutton v. Strickland, 919 F.2d 1531, 1537 (11th Cir. 1990)); see also Hatcher ex rel. Hatcher v. Fusco, 570 F. App'x 874, 877 n.3 (11th Cir. 2014) ("In the qualified immunity context, a government official acts within the scope of [his] discretionary authority when he pursues a job-related goal through means that are within his power to utilize." (alterations adopted)); O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004) (turning, in the discretionary authority inquiry, to whether defendant's activity "is a part of his job-related powers and responsibilities").

The parties do not dispute whether Defendants Batten, Espinoza, and Cole were acting within their discretionary authority. See generally Dkt. Nos. 21, 24, 28, 29, 30. In fact, the second amended complaint effectively concedes that all actions challenged in Counts One and Three are "of a type that fell within the employee's job responsibilities," as Plaintiff states explicitly that the "acts or omissions" of Defendants Batten, Espinoza, and Cole "were conducted within the scope of [their] official duties and employment." Dkt. No. 21 ¶¶ 28, 48; Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004); see also Ellison v. Hobbs, 786 F. App'x 861, 871–72 (11th Cir. 2019)(holding that "render[ing] first aid and resuscitation services" is within a certified paramedic's scope of authority under Georgia law). Because of this, the burden shifts to Plaintiff to show that these Defendants violated her Fourth Amendment rights which were clearly established at the time of the incident. Miller, 129 F.4th at 1333 (citations omitted).

### ii. Violation of Plaintiff's Fourth Amendment Rights

In both Counts One and Three, Plaintiff alleges excessive force in violation of her Fourth Amendment rights. For Plaintiff to plausibly allege a Fourth Amendment violation, she must allege sufficient facts "to show [Defendants'] conduct was objectively unreasonable." Martin, 521 F. Supp. 3d at 1321 (citing Graham v.

<u>Connor</u>, 490 U.S. 386, 395 (1989)). The proper lens through which the Court views the circumstances is the "perspective of a reasonable officer at the scene." <u>Id.</u> (citing <u>Graham</u>, 490 U.S. at 396). Finally, at the motion to dismiss stage, the Court shall—while accepting Plaintiff's allegations as true—examine "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." <u>Id.</u> (quoting <u>Draper v. Reynolds</u>, 369 F.3d 1270, 1277-78 (11th Cir. 2004)).

### a.    Count One against Defendants Batten and Espinoza in their Individual Capacities[22]

Count One centers on the amount of force used by Defendants Batten and Espinoza when they arrested Plaintiff, restrained her with handcuffs, and put her in the patrol vehicle. Dkt. No. 21 ¶¶ 26-36. To determine whether force is excessive in this scenario, the Supreme Court has directed courts to consider many factors, including "the severity of the crime at issue, whether the suspect

---

[22] While the Court notes that Count One is against both Defendant Batten and Defendant Espinoza, the Court nonetheless "must consider [qualified immunity] on a claim-by-claim and defendant-by-defendant basis." <u>Miller</u>, 129 F.4th at 1333 (citing <u>Alcocer v. Mills</u>, 906 F.3d 944, 951 (11th Cir. 2018)). In the second amended complaint, Plaintiff primarily refers to Defendants Batten and Espinoza collectively, claiming that both Defendants carried out the same challenged actions. <u>See, e.g.</u>, Dkt. No. 21 ¶¶ 4-5, 7-8, 26-36. That being so, to the extent there exists any slight difference between Defendants Batten and Espinoza in the allegations against them, the Court will note these differences and discern whether they impact the viability of the qualified immunity defense for that particular Defendant.

poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The Eleventh Circuit also considers "the relationship between the need and amount of force used" and the extent of the injury inflicted as important considerations. Sebastian v. Ortiz, 918 F.3d 1301, 1308 (11th Cir. 2019) (citations omitted).

Defendants Batten and Espinoza argue that Plaintiff does not meet her burden to show a constitutional violation because the force used was *de minimis*. Dkt. No. 29 at 7. "[T]he application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). A law enforcement officer's right to make an arrest "necessarily carries with it the right to use 'some degree of physical coercion or threat thereof,' and 'the typical arrest involves some force and injury.'" Ortiz, 918 F.3d at 1308 (quoting Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002)). In the context of handcuffing—which is alleged in the present case—"[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." Rodriguez, 280 F.3d at 1351 (citing Nolin, 207 F.3d at 1257–58; Brissett v. Paul, 141 F.3d 1157 (4th Cir. 1998); Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990);

47

Martin v. Gentile, 849 F.2d 863, 869–70 (4th Cir. 1988); Silverman v. Ballantine, 694 F.2d 1091, 1096–97 (7th Cir. 1982)).

Here, Plaintiff's allegations, when taken in the light most favorable to Plaintiff to the extent they are not contradicted by the bodycam footage, do not show that Defendant Batten and Espinoza acted unreasonably in carrying out her arrest. Dkt. Nos. 13-1, 13-2, 21; see also Martin, 521 F. Supp. 3d at 1321. Importantly, in comparison to the allegations against Defendants in the second amended complaint painting Plaintiff as compliant and the deputies as unreasonably forceful, dkt. no. 21 ¶¶ 4–6, the bodycam footage tells a different story—a story which does not involve unconstitutional use of force by the Deputies. Dkt. Nos. 13-1, 13-2. For example, the bodycam footage, at the very least, suggests that Plaintiff was not compliant leading up to and during her arrest, that Plaintiff was interfering with another arrest, and that she threatened and hit Defendant Espinoza. See Dkt. No. 15 at 25; Dkt. No. 13-1 at 01:37–39; Dkt. No. 13-2 at 05:37–42. There, Defendant Espinoza actually warned Plaintiff that she could go to jail for interfering with an arrest, yet she did not heed his warning to "get back." Dkt. No. 13-1 at 00:02–49. Instead, directly contradicting Plaintiff's allegations in the second amended complaint stating in a conclusory manner that she acted to defend herself from an "assault," she, alone, can be seen on the bodycam

48

video slapping the officer. Compare Dkt. No. 21 ¶ 6, with Dkt. No. 13-1 at 00:05-01:45, Dkt. No. 13-2 at 05:37-50.

After Defendant Espinoza indicated that he intended to arrest Plaintiff, the video shows Plaintiff moving away from Defendant Espinoza by climbing into a vehicle and repeatedly stating that Defendants could not arrest her. Dkt. No. 13-1 at 01:37-47; Dkt. No. 13-2 at 07:00-13. As such, the video shows a noncompliant individual who was verbally and physical resisting arrest for interfering with another arrest, refusing to comply with the deputies,[23] making verbal threats, and hitting an officer-facts which favor qualified immunity. See Graham, 490 U.S. at 396 (considering the crime prompting arrest, whether the suspect is threatening to officers or others, and whether the individual was compliant).

---

[23] While Plaintiff cites a variety of Eleventh Circuit cases to argue the Deputies used excessive force, her lack of compliance is what makes those cases distinct. Plaintiff claims that Defendants Batten and Espinoza violated her Fourth Amendment rights because the Eleventh Circuit defines "excessive force" to include "the unjustified use of force in response to verbal protest, expressive conduct, or even heightened emotion." Dkt. No. 28 at 10-11 (citing Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000); Hadley v. Gutierrez, 526 F.3d 1324 (11th Cir. 2008); Fils v. City of Aventura, 647 F.3d 1272 (11th Cir. 2011); Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002)). In sum, the caselaw cited by Plaintiff involves either (1) severe physical harm by officers that occurred after an individual was secured and posed no threat, or (2) physical harm by officers well above what was necessary to detain a compliant individual. The video makes it clear that neither condition is present in this case. Dkt. Nos. 13-1, 13-2.

In light of these circumstances, the physical force by Defendants Batten and Espinoza during the arrest does not amount to a Fourth Amendment violation. While Defendant Espinoza did pull on Plaintiff's left arm to get her out of the vehicle that Plaintiff climbed into when Espinoza attempted to place her under arrest, leaving Plaintiff' midriff exposed as she collapsed to the ground, this was only after Espinoza initiated the arrest of Plaintiff, and she refused to comply. Dkt. No. 13-2 at 07:00–15, 08:50–57. Then, any further physical contact by the Deputies was limited to helping Plaintiff. For example, Defendant Batten helped to turn Plaintiff over on the ground so that Defendant Espinoza could place her in handcuffs, then Defendant Batten picked Plaintiff up from the ground. Id. at 07:00–58. Once Plaintiff was restrained, the Deputies used force to lift Plaintiff into the patrol vehicle—help which Plaintiff *herself* requested. Dkt. No. 13-1 at 05:37–06:40; Dkt. No. 13-2 at 10:41–11:36. In sum, the Deputies handcuffed Plaintiff behind her back before transporting her in a patrol car, which is a "relatively common and ordinarily accepted non-excessive way to detain an arrestee." Rodriguez, 280 F.3d at 1351.

In addition, Plaintiff's alleged pre-existing conditions and resulting injuries do not render the force used excessive. While it is true that handcuffing and restraint used during the course of an arrest may cause some pain, this does not automatically

amount to a constitutional violation, even "when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." Id. at 1353. On the other hand, there exists a narrow exception for situations where officers had notice of a pre-existing condition rendering an arrestee particularly vulnerable to force. Williams v. Sirmons, 307 F. App'x 354, 362 (11th Cir. 2009). The Eleventh Circuit, interpreting its prior dicta in Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002), describes this exception as follows:

> In [Rodriguez], we suggest that where an officer knows of an arrestee's particular vulnerability and nonetheless applies a degree of force which causes serious injury, that force, under some circumstances, may be considered excessive, even if the force used would not have harmed a less vulnerable person. In other words, where an otherwise minimal amount of force causes serious injury and the officer *knew* it would cause serious injury, the application of such minimal force may not be objectively reasonable. Nothing in Rodriguez suggests, however, that a minimal amount of force against a fragile arrestee which results in a *minimal* injury—of the sort that would be expected from a typical arrest of a resisting arrestee—is sufficient to support an excessive force claim.

Id. (emphasis in original).

Even considering this exception, Defendants Batten and Espinoza did not act unreasonably when they arrested Plaintiff and placed her in the patrol vehicle. First, Plaintiff repeatedly yells throughout the bodycam footage that the Deputies were "hurting her," that she "has broken bones all over [her] body," two "broken knees," a "broken arm," "kidney failure," two "broken shoulders,"

and a "broken elbow." Dkt. No. 13-1 at 0:05-01:31, 03:38-59, 04:32-45; Dkt. No. 13-2 at 10:32-42, 11:16-40. This is supplemented by the "problem list" submitted by Plaintiff, which lists general "pain" in her shoulders and wrist pre-dating the incident, alongside more shoulder "pain" and an "unspecified injury" from the date of the arrest. Dkt. No. 19 at 13. Even assuming this repeated yelling gave deputies notice that otherwise minimal force would cause serious injury, the Deputies did not act unreasonably by using some amount of force to restrain Plaintiff who was noncompliant and resistant after threatening and hitting a deputy. Dkt. No. 13-2 at 07:00-13; Dkt. No. 13-1 at 01:37-47; see Sirmons, 307 F. App'x at 361-62 (concluding that officers using "a minimal amount of force" resulting in "minimal injury" to arrestee could not support excessive force claim where arrestee was resistant and trying to flee, even where arrestee was "visibly pregnant" and particularly vulnerable to force); see also Rodriguez, 280 F.3d at 1351 (finding no constitutional violation even where arrestee was screaming that officers were hurting him during arrest).

Finally, Plaintiff does not provide sufficient factual support to make it plausible that her injuries sustained during the arrest were beyond "the sort that would be expected from a typical arrest of a resisting arrestee." Sirmons, 307 F. App'x at 362. Plaintiff alleges that the force used by Defendants Batten and Espinoza "caused serious injuries and aggravated others," but

she does not elaborate on what those alleged "serious injuries" were. Dkt. No. 21 ¶ 35. And, while the second amended complaint does include an embedded photo of Plaintiff's "right arm bruising" from the encounter, id., minor bruising alone has been found to fall "within the ambit of the *de minimis* force principle." Nolin, 207 F.3d at 1258 n.4. Lastly, Plaintiff's "problem list" referenced as an exhibit does not carry the day, either, as it does nothing more than list general pain and unspecified injuries to body parts that were, according to the list, already injured before the arrest. Dkt. No. 19 at 13-14; see also Rodriguez, 280 F.3d at 1351 (finding no constitutional violation by officers even after force used during arrest significantly damaged internal surgical hardware from arrestee's recent elbow procedure). Because there is insufficient factual support to bring Plaintiff's alleged injuries beyond *de minimis* injuries from a lawful arrest, the Court holds that the force was reasonable, despite any contention that Plaintiff was particularly susceptible to injury.[24] See Sirmons, 307 F. App'x at 362 (same).

---

[24] The Court notes that force used *after* a suspect is restrained may constitute excessive force, even if it is *de minimis*. Sirmons, 307 F. App'x at 362 n.6 (citing Ferraro, 284 F.3d at 1192). However, once Plaintiff was restrained, the additional physical contact the deputies made with her was *at her own request*-the bodycam footage depicts Plaintiff asking the Deputies to help her climb into the patrol vehicle, and the Deputies then lift her up into the vehicle. Dkt. No. 13-1 at 05:37-06:48; Dkt. No. 13-2 at 10:40-11:36. Not to mention, this contact came after the Deputies pleaded with Plaintiff and gave her ample opportunity to get in

In sum, Plaintiff has not met her burden to show a constitutional violation. Thus, the Court holds that Count One in its entirety can be dismissed for failure to state a claim, as Plaintiff has not plausibly alleged a Fourth Amendment violation, or, in the alternative, Defendants Batten and Espinoza are entitled to qualified immunity to the extent Count One is an individual capacity claim. Iqbal, 556 U.S. at 678.

### b.    Count Three against Defendant Cole

In Count Three, Plaintiff challenges the alleged force used by Defendant Cole during the course of her medical evaluation. Dkt. No. 21 ¶¶ 46–54. Plaintiff alleges that Defendant Cole's "choice of words and aggressive actions, including the use of profanity and physical assault toward Plaintiff" violated Plaintiff's constitutional rights "the moment [Cole] put his hands on her." Id. ¶ 50. Plaintiff does not provide much detail on the challenged actions,[25] but she does claim that Cole pushed her "with

---

the vehicle without force, asking her to get in the patrol truck herself so that officers did not have to fight her to "put [her] in the truck." Dkt. No. 13-1 at 05:21–37. This "force" used to help Plaintiff into the vehicle, when surrounding circumstances are considered, cannot support a Fourth Amendment claim.

[25] Plaintiff, in her response to Defendants' motion to dismiss, again sets forth a plethora of factual allegations that do not appear in the second amended complaint or exhibits. Dkt. No. 28 at 15. Plaintiff cannot rely on facts not properly before the Court in an attempt to salvage an otherwise-deficient pleading. Burgess, 600 F. App'x at 665 (citing Rosenberg, 554 F.3d at 967).

54

both hands toward the wall" and "put his hands forcefully on her chest and bent her hand at an unnatural angle." Id. ¶ 51.

Here, even taking these allegations as true, Plaintiff fails to plausibly allege excessive force, warranting dismissal of Count Three in its entirety. First, Plaintiff alleges that Cole, an emergency medical professional, rendered medical care after Plaintiff experienced a seizure, but the second amended complaint is void of factual support for the contention that the force used was unreasonable given the circumstances. See generally Dkt. No. 21; see also Martin, 521 F. Supp. at 1321 (citing Draper, 369 F.3d at 1277-78); Baker v. City of Madison, Ala., 67 F.4th 1268, 1279, 1281 (11th Cir. 2023) (concluding that district court properly granted defendants' motions to dismiss and noting that the Fourth Amendment reasonableness inquiry must account for defendants' need to make "split-second judgments" to address a particular situation rather than "wait[ing] and hop[ing] for the best"). Instead, Plaintiff includes only conclusory allegations that she was "physically assaulted," by Cole, who allegedly violated her constitutional rights "the moment he put his hands on her." Dkt. No. 21 ¶¶ 50-51. Put plainly, "[n]ot every push or shove . . . violates the Fourth Amendment," and the allegations in the second amended complaint do not make it plausible that *this* push constitutes excessive force. Graham, 490 U.S. at 397 (citations omitted).

Any additional complaints about Defendant Cole's medical care—namely, Defendant Cole's alleged failure to conduct appropriate "assessments"—appear for the first time in Plaintiff's briefing in response to the pending motion to dismiss, not the second amended complaint. Dkt. No. 28 at 14–15. As a result, these allegations are not properly before the Court. Burgess, 600 F. App'x at 665 ("[P]laintiffs cannot amend their complaint through a response to a motion to dismiss." (citing Rosenberg, 554 F.3d at 967)). Even if these allegations are considered, excessive force claims center on force *actually used*, not generalized complaints about alleged omissions in medical care. See Martin, 521 F. Supp. at 1321 (considering amount of forced *used* in Fourth Amendment inquiry (citing Draper, 369 F.3d at 1277-78)). Even further, Plaintiff's challenges Defendant Cole's medical care in her briefing focus on Eighth Amendment caselaw and deliberate indifference—not what constitutes excessive force under the Fourth Amendment. Dkt. No. 28 at 14–16.

The "extent of the injury inflicted" similarly favors dismissal of this claim, as Plaintiff does not plausibly allege that she suffered more than *de minimis* injury from the medical care. Martin, 521 F. Supp. at 1321; Nolin, 207 F.3d at 1257. Plaintiff alleges that she "suffered damages," but this is stated in a conclusory manner with no factual background on the type of injury sustained. Dkt. No. 21 ¶ 53. Plaintiff similarly fails to

provide non-conclusory allegations to explain why Defendant Cole's actions caused harm beyond what would be expected when a paramedic renders emergency aid following an alleged seizure.[26] See Sirmons, 307 F. App'x at 362 (accounting for "the sort [of injury] that would be expected" from state officials' actions in Fourth Amendment excessive force inquiry).

Finally, the alleged use of profanity does not remedy Plaintiff's failure to allege excessive force, either. The Court may consider a Defendant's language in a Fourth Amendment analysis, but "'words alone cannot make an otherwise proper' use of force 'unconstitutional under the Fourth Amendment.'" Jones v. Ceinski, 136 F.4th 1057, 1062 (11th Cir. 2025) (alterations adopted) (quoting Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005)). As a result, Plaintiff fails to plausibly allege that Defendant

---

[26] Plaintiff also cites no case where emergency medical personnel responding to a call for medical assistance violated the patient's Fourth Amendment right to be clear from excessive force, nor does she provide valid reasoning to show Defendant Cole should have had fair notice that he violated "clearly established" Fourth Amendment law. See generally Dkt. Nos. 28, 30; see also Hobbs, 786 F. App'x at 877 (concluding that there was no clearly established law to put a reasonable paramedic on notice that "medical personnel responding to a 911 emergency call for medical assistance violated the [Fourth Amendment] rights of a patient"); O'Brien v. City of Pembroke Pines, Fla., No. 05-61366-CIV, 2005 WL 8154845, at *6 (S.D. Fla. Nov. 16, 2005) (holding that paramedic was entitled to qualified immunity on excessive force claim based, in part, on a lack of clearly established law). As such, Defendant Cole is also entitled to qualified immunity as to Count Three because he did not have fair warning that the manner in which he rendered emergency aid violated Plaintiff's Fourth Amendment rights. See Hobbs, 786 F. App'x at 877 (same).

Cole violated her Fourth Amendment rights, and Count Three is **DISMISSED.**

### E.    Plaintiff's Remaining Claims

Having disposed of Plaintiff's shotgun claims, Plaintiff's claims that lack a sufficient legal basis, and Plaintiff's claims to which Defendants are immune, the Court will now analyze Plaintiff's remaining claims which fail to set forth a "plausible claim for relief." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). These claims include (A) Count Five against Defendants Kirkland and Morgan in their individual capacities; and (B) Count Nine against Defendant Taylor in his individual and official capacity and the Board.

### i.    Count Five: Failure to Intervene

In Count Five, Plaintiff claims Defendants Kirkland and Morgan failed to intervene during Defendant Cole's medical examination "in violation of 42 U.S.C. § 1983." Dkt. No. 21 ¶¶ 63–69. Under Eleventh Circuit caselaw, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007) (citations omitted). To survive a motion to dismiss, a party asserting a failure to intervene claim must plausibly allege that Defendants were "(1) in a position to intervene in an ongoing constitutional violation and (2) failed to

do so." <u>Williams v. Radford</u>, 64 F.4th 1185, 1199 (11th Cir. 2023). "[A]n officer cannot be held liable for failing to stop or intervene when there was no constitutional violation being committed" because a failure to intervene claim is "wholly dependent on the underlying [constitutional claim]." <u>Ortiz</u>, 918 F.3d at 1312.

Plaintiff's failure to intervene claim is not sufficiently pled because she failed to plausibly allege that Defendants Kirkland and Morgan were "in a position to intervene in an ongoing constitutional violation." <u>Radford</u>, 64 F.4th at 1199. In fact, Count Five does not allege there was an ongoing constitutional violation at all. Dkt. No. 21 ¶¶ 63-69. Rather, Plaintiff—without citing to any particular constitutional provision or otherwise mentioning the Constitution—claims that there was a violation of Section 1983 itself when Defendants Kirkland and Morgan failed to stop an "assault" by Defendant Cole. <u>Id.</u> ¶¶ 9, 63. On its face, Plaintiff's failure to allege a constitutional violation—let alone whether Defendants Morgan and Kirkland were in a position to intervene—warrants dismissal of Count Five. <u>Id.</u>

Even if the Court turns to the remainder of the second amended complaint to allegations that have *not* been incorporated into Count Five, the failure to intervene claim fares no better. <u>See generally id.</u> Because the failure to intervene claim focuses on Defendants Kirkland and Morgan's alleged failure to stop an "assault" by

59

Defendant Cole, id. ¶¶ 63–69, Plaintiff may intend for the underlying constitutional violation to stem from the Fourth and Eighth Amendment claims against Defendant Cole in Counts Three and Four. See id. ¶¶ 46–62. However, in light of this Court's holding regarding Plaintiff's Eighth Amendment claims, Count Four cannot constitute the underlying constitutional violation because Plaintiff was not a convicted criminal eligible to pursue an Eighth Amendment claim. See Ingraham, 430 U.S. at 671 n.40; Radford, 64 F.4th at 1199 (turning to the disposition of other constitutional claims in the complaint to discern whether there was an underlying constitutional violation to support a failure-to-intervene claim).

Finally, Plaintiff's Fourth Amendment claim against Defendant Cole in Count Three cannot form a basis for the failure to intervene claim, either. Courts have held that, where qualified immunity is granted on the underlying constitutional claim for failure to allege a clearly established constitutional violation, a failure to intervene claim based on this underlying constitutional violation must also fail. West v. Fleming, No. 1:23-CV-01907-LMM, 2024 WL 4492066, at *5 (N.D. Ga. Sept. 16, 2024) (dismissing underlying excessive force claim on qualified immunity grounds and, as a result, concluding that Plaintiff's "failure-to-intervene claim must also be dismissed" (citing Radford, 64 F.4th at 1199)); see also Serrano v. Heffner, No. 5:23-CV-109-TKW-MJF, 2024 WL 1364288, at *7 (N.D. Fla. Mar. 1, 2024), report and

60

recommendation adopted, 2024 WL 1348389 (Mar. 29, 2024). Here, because Plaintiff failed to plausibly allege a Fourth Amendment violation claim against Defendant Cole, she cannot maintain a failure-to-intervene claim based on this alleged excessive force against Defendants Kirkland and Morgan. Fleming, 2024 WL 4492066, at *5. At bottom, to the extent Plaintiff relies on her Fourth and Eighth Amendment claims to form a basis for her failure-to-intervene claim, Count Five must be **DISMISSED** for lack of a constitutional basis. Ortiz, 918 F.3d at 1312.

### ii.  Count Nine: ADA Violation

Under Title II of the ADA, public entities may not discriminate against individuals with disabilities or deny them services because of their disabilities. Owens v. Sec., Fla. Dep't of Corr., 602 F. App'x 475, 477 (11th Cir. 2015) (citing 42 U.S.C. § 12132). "Only public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010). Bacon County falls within the ADA's definition of a "public entity," and, as such, must ensure that each of its services, programs, or activities is "readily accessible to individuals with disabilities." Shotz v. Cates, 256 F.3d 1077, 1080 (11th Cir. 2001) (citing Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000)).

In Count Nine, Plaintiff claims that she experienced multiple ADA violations when she was transported to and confined in the

61

Bacon County Jail. Dkt. No. 21 ¶¶ 95–100. In doing so, she asserts an ADA claim against Defendants Taylor and the Board as the "entity and chairman of the board of the entity responsible for the county-maintained jail."[27] Id. ¶ 98. The Eleventh Circuit has held that vicarious liability is not available under Title II. Ingram v. Kubik, 30 F.4th 1241, 1258 (11th Cir. 2022). However, claimants may pursue deliberate indifference claims under the ADA, which are governed by the standard articulated by the U.S. Supreme Court in Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998). See Ingram, 30 F.4th at 1259 ("We conclude that 'Gebser provides the correct standard' under Title II." (quoting Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334, 349 (11th Cir. 2012)). The Gebser approach "requires the deliberate indifference of an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the entity's behalf and who has *actual knowledge* of discrimination in the entity's programs and fails adequately to respond."[28] Id.

---

[27] While the second amended complaint does not clarify whether Count Nine is against Defendant Taylor in his official versus individual capacity, Plaintiff does indicate that she is generally suing Defendant Taylor "in his individual and official capacities." Dkt. No. 21 ¶¶ 17, 95–100. Since "only public entities may be liable under the ADA," Count Nine fails to state a claim against Defendant Taylor in his individual capacity. Owens, 602 F. App'x at 478 (citing Edison, 604 F.3d at 1308). As such, Count Nine is **DISMISSED** to the extent Plaintiff asserts an individual capacity ADA claim against Defendant Taylor.

[28] "Deliberate indifference" must also be plausibly alleged when a claimant, like Plaintiff, dkt. no. 21 at 26–27, seeks monetary

(alterations adopted) (emphasis in original). To plausibly allege the underlying discrimination, a claimant must provide sufficient factual support to show: (1) that she is a qualified individual with a disability; and (2) that she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity or a failure to accommodate the disability; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability. Owens, 602 F. App'x at 477 (citing Bircoll v. Mia.-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007)); Dudley v. Singleton, 508 F. Supp. 3d 1118, 1142 (N.D. Ala. 2020) (citing Bircoll, 480 F.3d at 1083; Nadler v. Harvey, No. 06-12692, 2007 WL 2404705, at *5 (11th Cir. Aug. 24, 2007)).

Plaintiff's ADA claim is not sufficiently pled because she does not plausibly allege the underlying discrimination, nor do her allegations satisfy Gebser's knowledge requirement. See Ingram, 30 F.4th at 1259. First, Plaintiff does not plausibly allege the underlying discrimination because she neither provides factual support for her conclusion that she qualifies as an

---

damages under Title II rather than injunctive relief. Streeter v. Dep't of Pub. Safety, 689 F. Supp. 3d 1312, 1333–34 (S.D. Ga. 2023) (citations omitted). Otherwise, Title II violations entitle a plaintiff to only injunctive relief, which Plaintiff does not request in her prayer for relief. Id.

individual with a disability under the ADA, nor does she plausibly allege that she suffered discrimination *because of* her alleged disability when she was taken to the Bacon County Jail. Owens, 602 F. App'x at 477 (citing Bircoll, 480 F.3d at 1083). A "qualified individual with a disability" within the meaning of Title II is "an individual with a disability who, with or without reasonable modifications . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Courts in this circuit have held that, to surpass a motion to dismiss an ADA claim, "[a] plaintiff 'must allege factual matter explaining *how* the alleged ailment substantially limits a major life activity,'" provide a "record of such impairment," or plausible allege how the individual is "regarded as having such impairment." Champion v. Mannington Mills, Inc., 538 F. Supp. 3d 1344, 1348 (M.D. Ga. 2021) (citing Garcia v. Goodwill Indus. of S. Fla., Inc., No. 18-25042-CIV-MORENO, 2019 WL 6052814, at *2 (S.D. Fla. Nov. 15, 2019)); Scott v. Fla. Dep't of Educ. Div. of Vocational Rehab., No. 3:08-CV-228-J-32MCR, 2008 WL 2245613, at *2 (M.D. Fla. May 9, 2008) (quoting Joubert v. City of Jack., No. 3:06-cv-480J33TEM, 2007 WL 496618 (M.D. Fla. Feb. 12 2007)), report and recommendation adopted, 2008 WL 2396760 (May 29, 2008). This does not require an "intricate description" of one's condition, id., but plaintiffs

64

may not rely solely on "conclusory allegations of disabilities under the Americans with Disabilities Act." Garcia, 2019 WL 6052814, at *3; see also Iqbal, 556 U.S. at 678–79.

Plaintiff states in conclusory fashion that she has "a qualifying disability under the ADA" and is "recognized as disabled" under the ADA, but she provides very little factual support for what that disability is or how it substantially limits a major life activity. Dkt. No. 21 ¶¶ 2, 95; Champion, 538 F. Supp. 3d at 1348. In fact, the only factual support—which is not incorporated into Count Nine—is that "Plaintiff used a cane due to mobility issues, including on the day of the complained-upon incident."[29] Dkt. No. 21 ¶ 2; see also Dkt. No. 13-1 at 04:06–17. This vague description of a physical injury, without further reference to how a major life activity is disrupted or how

---

[29] The bodycam footage submitted by Defendants seemingly contradicts this statement. Dkt. No. 13-2 at 00:40–00:50. In that footage, an individual, who appears to be Plaintiff, is seen standing and walking in the yard of the home where the arrest occurred, and she does not have a cane. Id. While the Court does not seek to opine on Plaintiff's alleged "broken bones" or "mobility issues," this exhibit nonetheless casts doubt on the contention that Plaintiff used a cane on the day in question. Dkt. No. 21. However, all ambiguities raised by the video footage must be construed in Plaintiff's favor at this procedural posture, and the video's depiction will only override the complaint's account if the video clearly and obviously contradicts the complaint. Jackson v. City of Atlanta, Ga., 97 F.4th 1343, 1350 (11th Cir. 2024). Thus, even if the potential contradictions between the second amended complaint and bodycam footage are not clear enough to override plaintiff's allegation that she ordinarily uses a cane, Plaintiff's ADA claim still fails for the various reasons explained in this Order.

Plaintiff is "regarded as" having a disability, does not suffice to state an ADA claim. See Scott, 2008 WL 2245613, at *2 (deeming insufficient plaintiff's conclusory allegation that "she is disabled due to lower back injuries"); see also Burks v. DeepSeafood, No. CV 22-00008-TFM-B, 2022 WL 16825206, at *7 (S.D. Ala. Aug. 9, 2022) (noting that ADA plaintiff failed to "allege facts plausibly suggesting that he had a record of an impairment that substantially limited a major life activity or was regarded as having such an impairment"), report and recommendation adopted, 2022 WL 16815175 (Nov. 8, 2022). Finally, while Plaintiff provides a "problem list" and "medication list" from past medical appointments, these merely list general bodily "pain," an "unspecified injury," and "carpal tunnel syndrome." Dkt. No. 19 at 13-14. Nowhere in this exhibit does it provide record of Plaintiff having a "disability" under the ADA, and listing past pain and injuries does not automatically bring an individual within the ADA's scope without some indication that major life activities were limited. See Freund v. Lockheed Missiles & Space Co., 930 F. Supp. 613, 617-18 (S.D. Ga. 1996) (holding that medical records alone do not establish a "record" of one's disability); Dixon v. City of Birmingham, Ala., No. 2:13-CV-404-WMA, 2015 WL 363162, at *8 (N.D. Ala. Jan. 27, 2015) (noting Plaintiff's knee pain and carpal tunnel alongside Plaintiff's testimony that she is limited

66

in major life activities to conclude that she is covered by the ADA).

Even if the Court were to assume that Plaintiff is a qualified individual with a disability,[30] Plaintiff also fails to sufficiently allege what conditions of her arrest and detention amounted to ADA noncompliance. See Owens, 602 F. App'x at 478–79. She first complains in her ADA claim that she was "not seen by the nurse until the day after intake." Dkt. No. 21 ¶ 97. However, the ADA cannot be used "as a means to pursue medical malpractice claims." Arenas v. Ga. Dep't of Corr., No. CV416-320, 2018 WL 988099, at *8 (S.D. Ga. Feb. 20, 2018) (citing Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005) (relying on Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996), to hold that the ADA is not violated simply by a prison's failure to attend to the medical needs of an individual with a disability)). Because the ADA was not "designed to consider the adequacy of medical treatment for a disability," Plaintiff's ADA claim may not be premised on a complaint about allegedly delayed or insufficient medical care in the jail. Id.

---

[30] The Court notes that walking can qualify as a major life activity under the ADA. Freund, 930 F. Supp. at 617 (citing 29 C.F.R. § 1630.2(i)). Plaintiff does not allege in the second amended complaint that this is the relevant limitation—beyond vague references to a cane and "mobility issues." Dkt. No. 21 ¶ 2. That so, Plaintiff's ADA claim still fails for reasons independent of whether she plausibly alleged that she has a qualifying disability, warranting dismissal.

Next, Plaintiff complains that because "some inmates were given outdoor time," she was denied "equal access to programs and activities." Dkt. No. 21 ¶ 97. The proper inquiry at this juncture is not whether Plaintiff was treated "differently from other inmates because of [her] disability." Arenas, 2018 WL 988099, at *7. Rather, Title II of the ADA "require[s] that this Court consider whether [Plaintiff] was unable to access services or benefits by reason of [her] disability." Id. (citing Tennessee v. Lane, 541 U.S. 509, 548-49 (2004)). As such, because Plaintiff's allegation regarding outdoor time focuses on a comparison between herself and other inmates rather than disparate access to outdoor space due to her alleged disability status, this too fails to provide an adequate basis for her ADA claim.

Finally, Plaintiff alleges that she was not provided reasonable accommodations because she was "housed in the farthest room in the unit." Dkt. No. 21 ¶ 97. This complaint is supplemented by allegations that appear earlier in the second amended complaint—though these are not incorporated into her ADA claim—where Plaintiff also complains of "inaccessible routes" to and from her bond hearing, "lack of lighting," and "unsanitary drinking supplies and water." Dkt. No. 21 ¶ 10; see also Torres, 734 F. App'x at 691 (turning to the entirety of a *pro se* complaint to discern whether any legally cognizable claim could be gleaned from the pleading). This Court has held that an ADA claim premised on

68

"access to appropriate cell assignment" can survive a motion to dismiss. Arenas, 2018 WL 988099, at *8 ("[T]o the extent that Plaintiff's claim is premised on the failure to provide certain accommodations related to [Plaintiff's] disability, such as *an appropriate cell assignment*, then this claim survives." (emphasis added)). However, even assuming that Plaintiff plausibly alleged that the cell assignment, routes, and detention conditions amounted to ADA discrimination, the entirety of her ADA claim still fails. This is because Plaintiff does not plausibly allege that either Defendant Taylor or the Board "has *actual knowledge* of discrimination in the entity's programs," as required to pursue monetary damages premised on a Title II supervisory liability claim.[31] Ingram, 30 F.4th at 1259; Streeter, 689 F. Supp. 3d at 1330. Instead, Plaintiff merely states that Defendant Taylor and the Board were "responsible for the county-maintained jail." Dkt. No. 21 ¶ 98. Be that as it may, authority over a county-run facility alone does not establish deliberate indifference without knowledge

---

[31] On this knowledge requirement, Plaintiff purports to quote from Loyd v. Alabama Department of Corrections, 176 F.3d 1336 (11th Cir. 1999), stating, "A public entity may be liable for maintaining a facility that denies people with disabilities meaningful access to its programs or services, whether or not the denial is the result of a formal policy or a longstanding custom." Dkt. No. 28 at 18. However, as noted by Defendants in their reply brief, the alleged "quote" cited by Plaintiff does not appear anywhere in Loyd. See Dkt. No. 29 at 13.

of discrimination and a failure to correct.[32] See Ingram, 30 F.4th at 1259 (concluding that Gebser requires an official to have authority *and* actual knowledge of discrimination for a failure to correct alleged disability-based discrimination to constitute deliberate indifference). In short, this provides another independent reason why Plaintiff does not state a claim in Count Nine. Thus, Count Nine is **DISMISSED.**

### CONCLUSION

For the reasons set forth in this Order, Plaintiff's motion to strike, embedded in dkt. no. 28, is **DENIED**, and Defendants' motion to dismiss, dkt. no. 24, is **GRANTED** in its entirety. Therefore, Plaintiff's second amended complaint is **DISMISSED with prejudice**,[33] and the Clerk is **DIRECTED** to close this case.

---

[32] The bulk of Plaintiff's arguments in her surreply similarly miss the mark. There, she primarily focuses on the alleged actions of Defendant Cole—against whom the ADA claim is *not* asserted. Dkt. No. 30 at 16–18. This, again, does not suffice to plausibly allege supervisory liability. See Ingram, 30 F.4th at 1259; Streeter, 689 F. Supp. 3d at 1330.

[33] Generally, a dismissal pursuant to Rule 12(b)(6) is a judgment on the merits. Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc., 673 F. App'x 925, 929 (11th Cir. 2016). Judgment on the merits is "presumed to operate as a dismissal with prejudice unless the district court specifies otherwise." Id. This being so, the Court "need not provide specific justification for dismissing with prejudice, as this is the default effect of a proper Rule 12(b)(6) dismissal." Id.; see also Dkt. No. 24 at 1 (seeking dismissal with prejudice).

**Case 5:24-cv-00074-LGW-BWC   Document 32   Filed 02/18/26   Page 71 of 71**

**SO ORDERED** this 18th day of February, 2026.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

71